Come on down! Or did you work things out? Uh, it could happen. May it please the court, my name is John Futrell and I represent Huntington Ingalls, one of the successors to the Avondale shipyard. The issue on this appeal is whether the plaintiff's negligence claims, all of which concern asbestos exposure, relate to or are associated with the Federal Maritime Commission's requirement that Avondale build World War II tugs and for four basic reasons. First, under Zerang v. Cranco, in the relating to language added by the 2011 amendment to the Federal Office of Removal statute, the tortious conduct alleged by a plaintiff need only relate to or be associated with the Federal directive to make the case true that the challenged conduct was caused by the Federal directive to satisfy the causal connection element of the Federal Office of Removal statute. Accepting that causation is no longer required, as you suggest, do you have any suggestions as to the limits of related to? Well, the limits of relating to, Your Honor, I believe depend on whether there is a Federal interest. In Your Honor, I would submit that there is a Federal interest in this case for several reasons. First of all, the Federal Maritime Commission required Avondale to install asbestos on these ships. Secondly, Avondale was obligated to comply with that requirement. The Federal interest was further manifested, Your Honor, by government inspectors who oversaw the construction of these vessels to ensure that the Federal requirements were complied with, including the requirement to install asbestos. Indeed, Your Honor, one of the vessels used in, built in Avondale during the relevant time period, was used during the D-Day invasion in Normandy. Further, this case implicates the same Federal interest that were implicated in your, the case you were involved in, Your Honor, the Winters case, where government oversight and control over the composition and manufacture of Agent Orange implicated Federal interest. Anything in the record showing there was a government control of the safety practices, as distinct from the manufacturing requirements? No, sir, there is not. I submit that, Your Honor, I submit that government control of safety is no longer required under the new relating to test. And Judge Africk, Judge Africk was sensitive to that, but felt that we were constrained by post-2011 amendment case law, and it's the trilogy that both parties have talked in the briefs. So, Barthel put aside Savoy because the panel rehearing is sort of more complicated, but then Zering reiterating the causal nexus statement in Barthel. Yes, sir. So, really, the issue, at least as Judge Africk framed it, was a rule of orderliness one, that this panel can't be. Correct, Your Honor, and now I have several responses. Okay. First of all, Your Honor, Savoy, the Savoy panel itself held that it was not addressing the effect of the 2011 amendment. Rather, it said that the resolution of that issue was for another day. Put aside the Savoy panel entirely. Yes, sir. Yes, sir. Although the Zering panel reaffirmed and reconsidered Barthel in light of the 2011 amendment, it did no such thing, Your Honor, in connection with Savoy. Rather, it dropped a footnote noting that the continuing viability of Savoy is still an open question in this circuit. And also, Your Honor, with respect to the rule of orderliness, in McIntell v. U.S. Department of Labor, this Court held that a panel's silence on statutory construction is not binding precedent. And as we demonstrated in our briefing, Your Honor, all of the cases in this petition for hearing en bas, none of those decisions considered the effect of the 2011 amendment. Also, Your Honor, under the rule of orderliness, when there is an — when Congress changes the law, that is the law that changes things. Yes. So therefore, that law would preempt — Actually intervening. The hardest case is Barthel itself, a published decision. Well, yes, sir, I understand. And in my view, Your Honor, Barthel is easily distinguishable. And the reason that Barthel is easily distinguishable is because in Barthel, the Federal government did not require the removing defendants to do anything, much less direct them to do anything — You're showing a government interest is what you're saying. Government interest again. I'm sorry, Your Honor. Government interest was not there. Right. There was no Federal interest there. But here you do have the Federal interest. Federal interest, I mean, of course. And I think it's important, when you do contrast the two, because in Barthel, the Federal government didn't require the removing defendants to do anything, Your Honor, much less anything to do with asbestos. By sharp contrast, the Federal government here required Avondale to install asbestos. Avondale was required to comply with that requirement, and the government maintained oversight and control. In Barthel, by contrast, Your Honor, there was no government oversight or control. Now, in Barthel, although someone must have directed the removing — I'm sorry, someone must have directed — I'm sorry, the Federal government must have directed someone to install asbestos on the vessels operated by the defendants, it certainly didn't direct that requirement to the removing defendants. Therefore, Avondale is not similarly situated, Your Honor, to the Barthel defendants. Your Honor, again, Congress, by adding the 2011 amendments, changed the law, and it changed the law materially. In its reign, this Court held that the plain meaning of relating to is broad, that it broadened the scope of the statute, and that the plain import of the phrase was inconsistent with the requirement of a precise Federal directive. In fact, Your Honors, Congress itself has said that the amendment broadened the universe of cases subject to Federal officer removal. Therefore, the 2011 amendments replaced the old caused by standard with a new relating to standard. Simply put, a removing defendant now need only show that the Federal directive is associated with or connected with the Federal directive. Here, the district court held that we did not satisfy — Your Honor, would you have a — does that mean that every ship that has asbestos on it under a government contract expresses a Federal interest? No, sir, and I think Barthel draws that line. If the government contract calls for a part that contains asbestos — Yes, sir. — and it specifies a board of certain qualities and strength, and so you have a purchase, then, an installation by the contractor of a fiber board of some kind, an asbestos board. That's enough in the government interest? Well, if the plaintiff's lawsuit — if the plaintiff sues that contractor because of the asbestos that was in that product, yes, sir, I believe it is. You're not going to have an asbestos suit unless you have asbestos there. The asbestos doesn't get there unless it was installed pursuant to a government contract. The government contract may or may not be silent with regard to the specification of it. It may be — it may not contain anything, but pursuant to the — the contractor may have put asbestos in there. Sir, I — yes, sir, I understand what you're saying. And in my opinion, Your Honor, to fulfill the government requirement of a Federal interest, the contractor would have to be required to install asbestos. Yes, sir. And I think that is one of the lines that you can draw, you know, trying to find out how far the relating to test goes. Causation is out, but you end up going back to many of the considerations that would also have been engaged had the analysis been in the language of causation. Right. Right. And, you know — and actually, I think that's a very good point, Your Honor, because unlike the old caused by test, the new relating to test is broader and it can encompass more than one activity or act that relates to the challenge conduct. To borrow on negligence terminology, a removing defendant is no longer required to show that the Federal directive is the sole proximate cause. It need only show that it is a contributing cause, to borrow, you know, from negligence type of language. So it has relaxed the standard, but it has not done away with the standard itself. Now — Is it fair to say that no matter how we rule, there will be a split? In other words, post-2011, the Eleventh Circuit isn't aligned with the Third and the Fourth Circuits? Your Honor, the Third Circuit in Enright Commonwealth has certainly — Articulated your viewpoint. And I don't believe the Eleventh Circuit in Kaver or the Fourth Circuit in Sawyer is incompatible with my view. In both of those cases, they would have satisfied the old caused by test anyway. So those circuits really haven't gone that extra step that the Third Circuit did in Enright Commonwealth or that I'm asking for you to do today. Your Honor, I don't see a conflict because they haven't gone that far. So your view of — tell me if I'm oversimplifying. Your view of the Eleventh Circuit case is a little bit how you view Bartel, which is the language in the opinions that refer to causality is unnecessary to the decisions? Yes, sir. I am aware of the language in Kaver referring to causality, and really I believe it just wasn't necessary. And it wasn't necessary for the facts of that case. As you recall, Your Honor, in that case, the rural electrical company had a contract with the Department of Agriculture that prevented it from making the dividend payments that the plaintiffs in Kaver were complaining about. So yes, Your Honor, the causation language wasn't necessary, and I don't believe that the Eleventh Circuits ever presented that they necessarily would rule any differently than what the Third Circuit did in the Enright Commonwealth, Your Honor. Your Honor, the plaintiffs have urged this Court to consider a number of issues other than the causal nexus test. But as you know, Judge Afric limited his opinion to just the causal nexus test. And you all very much know that as a general rule, this Court will not review issues not ruled on below. Now, the Legendres have offered absolutely no reason why this Court should deviate from its normal practice. And indeed, in federal officer removal cases, Your Honor, this Court has historically been very cautious limiting its decisions to just cases, to just issues that are fully developed in the record. For example, in Savoie, in Humphreys v. Elliott Company, the parties actually briefed the culpable federal defense issue, but this Court did not address them because they were not addressed below. Thank you, Mr. Brutell. Mr. Clement. Good morning. May it please the Court. My name is Jonathan Clement. I represent the plaintiffs' appellees in this wrongful death action, which involves the death of Mary Jane Wilde from mesothelioma caused by asbestos. What's key here is our position is that the District Court was correct in finding that there was no causal nexus between the challenge conduct at issue in this case and Avondale's directions from the government to use asbestos. And I think that's what is somewhat getting lost in Avondale's argument. They're essentially taking the position that the 2011 amendment changed the causal nexus test to one not of looking at the challenge conduct at issue, but just looking at was asbestos used and did it cause the injury. And in Zerang, I think that's what... Well, is it related to the injury? The asbestos itself, because asbestos causes mesothelioma, is related, but the key issue that the Court set forth in Zerang when they talked about Bartel is you can't extend it to the point of irrelevance. You still have to look at the challenge conduct at issue. You're talking about government interest. That's the whole point, historically, of the removal statute. So if the government has a particular interest, it's going to be frustrated in the state court system when it's identified, whether it's a revenue agent or... Right. And I think what the Zerang Court did in discussing Bartel is said simply because the Navy was providing, or the government in the Bartel decision, simply because they were providing ships that were specced with asbestos that had asbestos. That didn't lead to a federal interest because the challenge conduct at issue was failure to train, failure to warn, failure to adopt safety procedures. And what the Court held is that it's charged conduct, charged private conduct that implicated no federal interest. Because in order to get to the federal interest of just mere using the asbestos, you'd have to extend it too far. And Your Honor, Judge Higgins said you mentioned Savoy and putting it aside. The thing I would bring up about Savoy is in Bartel, because the Zerang Court essentially upheld the ruling in Bartel, the Savoy Court, when it was addressing the negligence claims, basically said the allegations and the challenge conduct are identical. So we think the result in Savoy would ultimately be the same, even though on rehearing, the Savoy panel chose not to address the amendment because I think essentially it wasn't brought up. Savoy, fairly read. Excuse me? Savoy, fairly read. But one of the things that opposing counsel brought up is he came forth with the idea that he believes the Third Circuit decisions support his position. I would disagree with that. In reading the Commonwealth case, they do talk about the relating to language and the association it must bring. But one of the key cases that came out of the Third Circuit in 2016 is the Papp case. And interestingly, they don't put much of a discussion in their brief about Papp. They just drop it as a footnote. But it actually was an asbestos case. And what was key in that case is typically when these remands get overturned, usually there's a strict liability component to the case. And it's pretty easy in those cases because the challenge conduct is the mere use of asbestos in the product. And that's what the government told the product manufacturer to do. In the Papp case, it was Boeing being sued as a defendant, a product manufacturer defendant, for including asbestos in their airplanes. But it didn't go up on strict liability. It went up on failure to warrant. Failure to warrant was an issue in mind that the relating to test was met simply because the government specced asbestos. What it said is the for or relating to requirement was met because of Boeing's evidence submitted that the government controlled the content of the written materials and warnings associated with the aircraft. They actually came forth with evidence showing a direct connection between the federal government and the failure to warrant claim. That's what Avondale has not done here. And Avondale admitted. But if the government specifications require the installation of asbestos, and then the asbestos, of course, is obviously the culprit here, why isn't that a offer of significant federal interest? And the reason it's not is because in Zarang, our challenge conduct is not the use of asbestos. And that's where, when you look at, for example, the analysis. It's actually straightforward without regard to the moment. Why isn't that a, directly, why isn't that an expression of federal interest? The courts, these cases and decisions are kind of scattered and we have this intervening statute related to them that some cases don't deal with that. But I'm asking you directly and articulately to answer the question, how do we answer this question of whether there is a requisite federal interest here that underpins the removal statute? And my question is, well, if the government, I think it's not there if the government simply has a contract and asbestos is used. But if they specify that government that asbestos is used, why wouldn't they? And then that's the accused product. Why isn't that sufficiently related to government interest? I think it differs depending on the claims at issue. If it's a product manufacturer, I agree. Because the challenge conduct is the fact that their product is defective because asbestos is used. That's not our claim here. Our claims have nothing to do with that. Our claim is not that he built a defective ship. We couldn't even recover against Avondale for building a defective ship that used asbestos. It revolves entirely around the fact that they didn't take safety precautions. And when Zerang said in that type of case where you have a failure to train, failure to warn, you'd have to extend it. Let me put it back to you again. I'm not sure it helps you to move to safety precautions. I understand why you do it. But now you're dealing with the government's structure and policing of government contracts. And government has a very unique, distinct power with regard to government contracts. You know that, of course. We know that. But Justice Scalia's opinion is riding with himself. So it seems to me that once you start talking about the government's requirements, and in noncompliance with them, you're really talking the language of federal interest. And if the government's silent, then they haven't expressed interest on the front end. That suggests that they don't have the requisite interest. But when they're detailing product line, are you with me on that? I hear what you're saying, but I think to find the interest just because asbestos was specified would be extending it too far, like the court said in Zerang. No, but you maintain that. Your case is different, you see, because you're talking about the failure to adequately police or to provide the safety measures that tend to use of asbestos. It's not a products case, yes. Why is that different? It seems to me like that's an even more interest in the federal government. Because it's different because of what the challenge conduct is. And that's what Zerang said. The test is still what the challenge conduct is versus what the challenge conduct is. The challenge conduct is the failure of the government and the federal hands to police the use of the product. But Avondale itself, they're not a federal – they're a contractor who has a federal contract with the government, but they're a private employer. And when you look – and I think a good distinguishment of this is in Bartell. And the way Bartell distinguished a situation which may call for a federal interest is they distinguished the Lalonde case. In that case, these were the facts. The federal government owned the facility. The federal government set forth the safety regulations and what the contractor had to actually do. The federal government set forth orders as to what the employer had to tell the employees and give warnings about the employees. That's the type of case that shows up and comes out to be a federal interest, not one where you have a private employer like Avondale, where you have your own safety guys saying that Avondale had no control – I mean the government had no control whatsoever over safety. The situation where the government in a military contract of a helicopter specifies that a particular safety latch will be located where it is and they make that decision in favor of – against safety because they want more armament on it. In that situation, that particular government contractor has such an interest that they enjoy an immunity. But I think in that case that you're talking about, the claim at issue would be product liability. In that situation, it was a product liability. They were relying on the Virginia law for product liability, specifically that the location of that lock which locked the lieutenant into the body of the helicopter and drowned him. That was a product – it was a straight product defect there. But that was precisely in conflict with the government specification that it be located the way it was, that that tradeoff be made. The law of Virginia was going one way with policy and the federal interest was going the other. They made the tradeoff with regard to interest. Now, there you have an articulation of federal interest. What I'm trying to get to is to get a handle on where we are now and how we shape this question of federal interest. And what you've said is helpful, but I'm pushing you back a little bit on your doubt that you've gone to. We're not bringing a product to suit. I understand that. But you're now talking about failure to police it, and that strikes me as a – And I understand, and I think the failure to police, as you say, would implicate a federal interest if the government was directing how Avondale should police the asbestos, and that's my position. I think that's what – the way in reading Zerang, that's how they read Bartel and distinguished Bartel. One of the additional things I wanted to bring up is in the Watson case, Watson v. Philip Morris, in talking about statutory construction, the Supreme Court indicated that while language may be broad, it's not limitless, and you can look to context, history, legislative intent. And what Avondale does is they actually cite to the House report. And what they're essentially coming here arguing is that the 2011 amendment was meant to essentially abrogate or overturn the line of cases that had discussed this negligence claim like Zerang, like Bartel. And I think ultimately that's what this court would have to do is overturn the holding in Zerang regarding Bartel and overturn Bartel. It would have been aimed at Bartel. Bartel was already – they had already fired before Bartel got there. And actually in the House report it talks about what it's aimed at. It wasn't aimed at the causal nexus requirement. The big issue was if you read the House report that Avondale cites, the problem with some of the courts were having is pre-suit discovery. So a federal officer would get petitioned to give a deposition. A federal officer would remove it. Courts were saying, well, the statute says a suit for their acts. So the courts were saying, well, they have to have a lawsuit that's actually been filed, so we're going to remand it. There's no lawsuit been filed yet. This is pre-suit discovery. So in the House report they actually state that's what this is meant to address because 47 states at the 2011 time period had pre-suit discovery amendments. And they were looking to fix that, and actually that's what the language that they changed was. It used to say sued in official or individual capacity for any act under color of such office. Now it says for or relating to any act under such color of federal offices. So I think what the 2011 amendment was really meant to do was to handle those pre-suit discovery type cases and the circuit splits on that and the issues that the district courts and federal courts were having with those cases. Because since 2011, I don't think any case has gone as far as Avondale is trying to do here, which is say just because the government specified asbestos, these failure to warrant claims bring it to be removable. And I think that that PAP case, that Third Circuit case, highlights this because that was a failure to warrant case. And the reason the government found that the relating to requirement was met was because of the evidence that the government was involved in the warnings at issue. So the challenge conduct and federal direction aligned. Was the Fourth Circuit, the Sawyer case, similar? The Sawyer versus, is it Foster-Wheeler? I think, again, there's evidence in those cases, and that's the evidence. Was that the government had directed the particular warnings? Yes. And I think that was the one, maybe the one with Foster-Wheeler, if I'm trying to remember correctly. But these equipment manufacturers, that's what they usually argue when they remove these cases, is that the government directed the warnings. They come forth with military specifications showing that for our technical manuals, the government says we had to do X, Y, and Z for warnings. And just like that PAP case, the evidence that they actually met about the warnings that would be included, that's what's absent from Avondale's removal. They don't even dispute that. They're not even arguing that the government was involved in how they would warn their employees in the implementation of safety measures. And to address just briefly the colorable federal defense portion, the Avondale interest brought up the fact that Judge Afric didn't reach that issue. And I know typically the courts won't address an issue that the lower court didn't address. But I would like to point out to the court, and I think we pointed it out in our brief as well, the issue's been briefed. The issue, the record's there on it. They argued it at the district court level. And what happened was they filed a motion to stay the appeal, to stay the remand pending the appeal. And in that denial of the motion to stay at the district court order, Judge Afric did address their colorable federal defense. So we do have his reasons as to why he feels Avondale didn't meet their burden of establishing a colorable federal defense. And with that, Your Honor, we would ask that this court affirm the district court's ruling that there was no causal nexus. And unless you have any other questions, I'll sit down. Thank you, Mr. Clement. Mr. Fruteau. Your Honor, contrary to what the Legendres argue, Zerang noted that the 2011 amendments broadened the scope of the statute and it replaces the old cause by test with a new relating to test. Secondly, Legendre, I'm sorry, Zerang admonished against interpreting the federal officer removal statute, I'm sorry, the 2011 amendments in such a way as to render them irrelevant or to give them a grudgingly narrow interpretation. Indeed, this court has repeatedly noted the Supreme Court's admission not to liberally interpret the federal officer removal statute. What they are advocating is precisely that type of grudgingly narrow interpretation. Also, this court, even before the 2011 amendments, noticed that at the causal nexus level, the analysis should not be unduly demanding. Now, going back to the federal interests, there's something I believe that the Legendres have overlooked. One of the main federal interests here is these asbestos was necessary to build these cargo ships and these tugs, and it doesn't require any citation of authority to show that American industrial might, in particular getting ships over to Europe, was an important part of winning World War II. It was a vital federal interest. Also, Your Honor, the Legendres are a day late and a dollar short with the legislative history argument. This circuit, the Third Circuit, the Fourth Circuit, and the Eleventh Circuit have now applied the 2011 amendment in circumstances other than pre-suit discovery. So, therefore, that horse is out of the barn. Finally, Your Honor, application of the relating to standard is consistent with the plain meaning of the 2011 amendments. It's consistent with Zerang, and it's consistent with the federal interest implicated. And for these reasons, Your Honor, Avondale respectfully requests that this court vacate the district court's remand order and remand the court case back down to address the remaining issues that were not addressed the first time before. Thank you, Your Honor. Thank you, Mr. Porteo, Mr. Cummings. Thank you both.